ARCHIBALD Y. F. MARK, NORA MARK, JEN FUI MOO AND EVA MOO *v.* CITY AND COUNTY OF HONOLULU, A MUNICIPAL CORPORATION, THE HAWAIIAN ELECTRIC COMPANY, LIMITED, AND THE MUTUAL TELEPHONE COMPANY.

NO. 2873.

RICHARD L. CARTER AND MARIE HANSON CARTER *v.* CITY AND COUNTY OF HONOLULU, A MUNICIPAL CORPORATION.

NO. 2874.

ARGUED JUNE 17, 1953.    DECIDED SEPTEMBER 16, 1953.

TOWSE, C. J., LE BARON AND STAINBACK, JJ.

OPINION OF THE COURT BY STAINBACK, J.

These two cases were consolidated for trial as they involved the same facts as to the alleged negligence of the defendants.

The original complaints allege that the City and County of Honolulu maintained in the conduct of its business as a municipal corporation an electric-light system for the purpose of lighting the public highway, to wit, Kamehameha highway at Punaluu, Oahu; that the city negligently maintained the insulators on light fix-

tures located on certain poles in that the same were so corroded that electricity leaped out into the lighting fixture and from there arched to Mutual Telephone Company's drive hook located on the same pole, thereby causing heavy electric current to travel through the telephone wire to the telephones in plaintiffs' houses at Punaluu causing fires which burned plaintiff's house in the one case to the ground and in the other caused certain damage.

The city demurred to the complaints in each case claiming governmental immunity as the complaints showed that the alleged negligence of the city occurred in the performance of a governmental function, to wit, in the operation of a municipal street-lighting system.

The lower court overruled the demurrer and written exceptions were duly filed. Both cases were tried jury waived.

After plaintiffs' and defendants' testimony was in, at the request of the judge the plaintiff Mark filed an amended complaint naming the Hawaiian Electric Company, Limited, and the Mutual Telephone Company as additional defendants. There were two counts: the first was based on negligence against the three defendants on the doctrine of *res ipsa loquitur*; the second alleged that the city negligently maintained the wiring and the light fixtures in the Punaluu area in that the same were so corroded, worn and frayed that the electric current leaked out into the metal parts of the lighting fixtures; that said condition could have been easily ascertained upon reasonable inspection. He also alleged that the Hawaiian Electric Company was negligent in allowing heavy electric current to escape from its main supply lines into the wires of the Mutual Telephone Company leading to plaintiff's house, thereby causing the same to burn; as to the liability of the Mutual Telephone Company the amended

complaint alleged that the telephone company was negligent in failing to have the usual protective device installed on the telephone in the plaintiff's house, which device would have prevented the house fire.

Both the electric company and the telephone company consented to enter the case and accepted the evidence that had already been presented at the trial against the City and County. The City and County objected to the amendment of the complaint and the joinder of the new defendants on the ground that at this late stage of the trial the same would be prejudicial to the city. The city demurred to the amended complaint which was overruled.

An amended complaint was also filed in the *Carter* case but the same did not include the Hawaiian Electric Company and the Mutual Telephone Company as the statute of limitations had run as to these defendants.

The evidence introduced showed that the City and County of Honolulu maintained an electric-light system for the purpose of lighting Kamehameha highway at Punaluu, Oahu; that the porcelain bushing-type insulators which were fixed in the metal housing of a bracket on certain poles, particularly 269, were broken and the wire leading into the bushing was bare and without insulation. This condition permitted the current to escape to the telephone hook on the same pole which held the telephone wire leading into the house; the pole, being damp and saturated with water, was a good conductor from the hook to this wire and the high current caused the insulation of the telephone wire attached to the wall within the home to catch fire and caused the complete destruction of one and damage to four other houses on this party line.

In the *Mark* case the court found for plaintiffs and against defendants and assessed damages against the

City and County of Honolulu in the sum of $21,054.54, against the Hawaiian Electric Company, Limited, in the sum of $2,807.28, and against the Mutual Telephone Company in the sum of $4,210.91.

In the *Carter* case the court found for the plaintiffs and against the defendant, the City and County of Honolulu, and assessed damages in the sum of $529.42.

The chief question presented is whether the City and County in operating a municipal street-lighting system is exempt from liability for damages caused by negligence in the operation of such system on the theory that it was engaged in a governmental function. Other questions relate to an alleged curtailment of cross examination of the plaintiffs' expert witnesses and also as to permitting an amendment to add the Mutual Telephone Company and the Hawaiian Electric Company as parties-defendant.

Both parties agree that the rule of law is that a municipal corporation is not liable in an action for damages for negligence of its officers, agents and employes, committed while in the exercise of a governmental function, as distinguished from a "corporate" or "ministerial" act. The theory is that the State being sovereign, no suit can be brought against it without its consent and a municipality in performing governmental functions is the agent of the State and, therefore, exempt from suit. (This immunity of a sovereign power is sometimes said to be a survival of the maxim that "The King can do no wrong" but, as stated by Mr. Justice Holmes in *Kawananakoa* v. *Polyblank*, 205 U. S. 349, 353, the immunity of a sovereign from suit rests upon no "formal conception or obsolete theory, but on the logical and practical ground that there can be no legal right as against the authority that makes the law on which the right depends.")

As to what is a governmental function and what is

a corporate or ministerial act of a municipality is a question upon which there is a wide divergence of opinion. The cases are in hopeless confusion and even in the same jurisdiction often impossible to reconcile.

In the recent United States Supreme Court case of *Delahite* v. *United States,* decided June 8, 1953, the Court discussed various decisions dealing with municipal liability for torts. That case involved the question of governmental liability under the United States Tort Claims Act giving an individual certain rights to recover from the Federal Government for injuries caused by the negligence of government employees. Delivering the majority opinion of the Court, Mr. Justice Reed made the following comment: "The Government also relies on the body of law developed in the field of municipal liability for torts which deal with discretionary, as opposed to ministerial, acts. Whatever the substantiality of this dichotomy, the cases which have interpreted it are in hopeless confusion; some have used 'discretionary' and 'ministerial' interchangeably with 'proprietary' and 'governmental,' while others have rather uncritically borrowed the same terminology from the law of mandamus. But even cases cited by the Government hold that, although the municipality may not be held for its decision to undertake a project, it is liable for negligent execution or upkeep."

Attempted distinctions are frequently made between "mandatory" and "permissive" powers of municipalities, between "discretionary" and "ministerial" acts, between nonfeasance and misfeasance, but these rules are by no means uniformly followed. These, as well as attempted distinctions between "governmental or public" and "proprietary or private" activities, have been subjected to sharp criticism both by the courts and by legal scholars. Frequently charge for use or profit-taking by the city

will induce courts to call an activity "proprietary." On the other hand, it is said "an incidental pecuniary advantage accruing to a municipality from the performance of a function characteristically public * * * does not transfer a public function into a private one * * *." (*Day* v. *City of Berlin,* 157 F. [2d] 323, 325; *Shoemaker* v. *City of Parsons,* 154 Kan. 387, 118 P. [2d] 408.)

There are several Hawaiian cases dealing with the question of county and City and County liability for torts. The earliest and leading case is that of *Matsumura* v. *County of Hawaii,* 19 Haw. 18, in which the county was held liable where its servants in maintaining and constructing a highway "did willfully, negligently and in total disregard of the rights and property of the plaintiff, divert the course of a large stream of water, then and there flowing in a certain wooden flume, that the said large stream of water so diverted * * * did rush with great force into and undermine a certain large mound or bank consisting of earth and rocks," which fell and struck and damaged a store, dwelling house, stables and out-houses of the plaintiff. A dissenting opinion by Mr. Justice Wilder held that "Counties are created for public purposes without regard to the actual wishes of their inhabitants and are in substance but agencies of the government for the purpose of aiding in the general administration thereof." He then concluded that the function of maintaining public highways, in the performance of which the damage occurred, is a governmental one in Hawaii and therefore the defendant was not liable, that the duties of maintenance and repair of public highways revolved upon the Territory, and cited the case of *Coffield* v. *Territory,* 13 Haw. 478, which held that the Territory was not liable for injuries from defective streets.

The majority opinion in the *Matsumura* case, 19 Haw.

18, *supra,* after citing the statute giving the county the power to open, construct and maintain streets, highways, roads, etc., discussed the various rulings on nonfeasance, negligence in performance of an act, necessary consequences of an act and intentional trespass, but stated it was unnecessary to enter into a discussion of the authorities holding that the repair of highways was properly classed as a corporate and not a governmental function " * * * because we are of the opinion that under no proper conception of the doctrine of municipal immunity in the performance of governmental functions can it be held to include immunity for negligence resulting in the direct invasion of plaintiff's private right as an adjacent land owner."

Following the case of *Matsumura* v. *County of Hawaii* is the case of *Halawa Plantation* v. *County of Hawaii,* 22 Haw. 753, which held that the county was liable for damage caused to a crop of cane by a fire started by road employees of the county acting within the scope of their employment. However, it will be noted in this case that the court stated, after citing the *Matsumura* case, "We are inclined to believe that we would hold otherwise if this was a case of first impression, but, the rule that a county is liable for the injury to private property caused by the negligent acts of its road employees, acting within the scope of their employment, having been announced in the first decision in the *Matsumura* case (19 Haw. 18) and reaffirmed in the same case in the later decision (19 Haw. 496), and the legislature having met in four regular sessions since the announcement of such rule without enacting any statute adopting a different rule, we must consider that the legislature has acquiesced in the rule announced."

The next case, *Reinhardt* v. *Maui,* 23 Haw. 102, held

that the county of Maui was liable in damages for non-feasance in failing to repair a defect in the public highway or to guard against injury therefrom resulting in personal injury to one lawfully traveling on the highway.

On the other hand we have the case of *Perez* v. *City and County of Honolulu,* 29 Haw. 656, which held that the City and County was not liable in damages for injury to a person caused by the negligence of its agents and servants in operating a fire engine and a police patrol wagon, the court holding the acts complained of which resulted in injury to the plaintiff were done in the performance of governmental functions.

Finally, we have the Hawaiian case of *Maki* v. *City & County,* 33 Haw. 167, which held that the City and County was liable in an action for damages for the negligence of its employees in removing "rubbish." This case distinguished "rubbish" from "garbage," pointing out that the municipal truck at the time of the accident was loaded with tree trimmings, coconut and hibiscus trimmings, cans and things of that sort; that the truck did not carry "wet garbage" or "kitchen refuse"; that the plaintiff had no proof showing that the removal of the rubbish in question was necessary for the protection and preservation of the public health or that its nonremoval would have been dangerous or deleterious to health; that this load did not fall within the definition "garbage" but should be classified as "rubbish" and though its accumulation might have created a fire hazard and there might be some element of health preservation in the removal and disposition of the rubbish in question, it was not a governmental function. Its dictum is to the effect that the removal of "wet garbage" would be a governmental function as an aid to the preservation of the health and the City and County would not be liable for negligence of

its employees in the removal of garbage.

We agree thoroughly with the quotation in the *Maki* case from the Harvard Law Review (vol. 34, p. 67) to the effect that "An examination of the case shows the futility, not to say absurdity, of any such distinction between governmental or public and corporate or private functions for the purpose of predicating tort liability."

We cannot say that the *Maki* case, in holding the City and County liable for negligence of its employees in removing dry trash but not for removal of "wet garbage" (dictum), has thrown much light on the distinction between governmental and private functions of a municipality or given a logical basis therefor. As a matter of fact, most acts about which the courts dispute as to whether they are governmental or private functions have some elements of a governmental function; the removal of trash has, certainly in this Territory, many elements of a governmental function in the protection of the health of the community. For example, at the outbreak of the bubonic plague in Honokaa during the war years, one of the first orders issued was to clear up all trash that might harbor rats within a certain district of residences, as plague is transmitted by fleas from rats. Again, such trash frequently harbors mosquitoes, cockroaches and other disease-carrying insects. So, also, the lighting of streets, particularly in congested districts and alleys, has some elements of a governmental function in the prevention of crime in addition to illumination for pedestrian and vehicular travel.

An article in the Yale Law Journal, volume 34, page 229, contains an interesting discussion of governmental liability in tort. It points out various cases making distinctions without a difference and discusses the cases showing their absurdity from the standpoint of logic and

common sense. For example, in certain States where the cities, but not the counties or the State, are liable for defects in streets and roads, we must accept the distinction which enables a pedestrian who falls into a hole located on the city line to recover damages if he fell on the city side (*Fleming* v. *City of Memphis,* 126 Tenn. 331, 148 S. W. 1057) but deny him relief if he fell on the county side (*Wood* v. *Tipton County,* 7 Baxter 112 [Tenn.]), and the cases where the maintenance of a city dump would produce liability for the injury to the property of an adjoining owner but not for personal injury. the first being based upon the theory of a nuisance, or the negligent maintenance of a sewer system which merely causes illness to persons without involving trespass upon the property produces no liability, while the invasion of a property right would give the injured party a right to recover.

The cases correctly state that the question of municipal liability for tort presents a problem fraught with great difficulty and that there is a lack of harmony among the decisions as to what is and what is not a governmental function. The decisions, including those of our own territorial supreme court, possess little rhyme or reason when viewed in the irreconcilable conflict of the decisions, but resemble the old saw that equity depended upon the length of the chancellor's foot.

At the risk of making confusion worse confounded, we suggest that a logical rule would seem to be that for an omission to perform public duties running to the community as a whole there should be no municipal liability to private individuals but in the undertaking of an affirmative course of conduct it should be immaterial that the duty being performed is a public one from which the municipality derives no profit or that it is a duty imposed

upon it by the legislature or for the several other reasons which are often given for holding a municipality not liable for the negligent acts of its employees and servants in so-called governmental functions.

An excellent case can be made for abolishment of the distinction between the so-called governmental and private functions for tort liability of a municipal corporation for negligence in affirmaitve conduct. (See 34 Harvard Law Review 67.)

The tendency of modern times is to extend rather than limit the liability of municipalities for tort actions. In a number of jurisdictions this has been done by court decisions, in others by statute, and the United States Government has enacted a statute relating to liability of the Government for certain negligent acts of its employees in the course of its business.

However, it will be noted that since these various Hawaiian decisions have been rendered the territorial legislature has convened in many sessions and has acquiesced in the court rulings, so we feel bound to follow the Hawaiian decisions holding the counties and the City and County not liable for negligence of its officers, agents and employees while in the exercise of what is known as a governmental function as distinguished from corporate activities. (*Halawa Plantation* v. *County of Hawaii*, 22 Haw. 753.) As to what is or is not a governmental function is difficult to determine; as stated in *Trenton* v. *New Jersey*, 262 U. S. 182, 191, "* * * there is no established rule for the determination of what belongs to the one or the other class."

The territorial decisions have held that maintaining streets and roads is a corporate function for which the City and County is liable for negligence of employees engaged in such work, but that the city was not liable for

injuries caused by the negligence of those operating a fire engine and a police patrol wagon; as yet there has been no decision upon the question of street lighting.

As would be expected, there is a sharp conflict of authority as to whether street lighting is a governmental function. Many cases have been cited by counsel both pro and con. A recent annotation on the subject follows the case of *Cabana* v. *Hart,* 19 A. L. R. (2d) 333, 334, some of these cases holding that the operation of an electric street-lighting system is a proprietary or corporate function, others that it is a governmental function.

Without attempting to review in detail the cases from the various jurisdictions, we quote from the editorial comment of this annotation as follows: "In a number of jurisdictions the viewpoint has-been taken that a municipality in constructing and maintaining an electric street-lighting system is employed in a governmental function and is, in the absence of statutory provisions to the contrary, not liable for injuries or death caused by its negligence in connection with the exercise of such functions. It is submitted that this view while still supported by a number of the more recent cases is, as a whole, on the decline, in conformity with the increasing criticism in modern times of the doctrine of immunity of public corporations. The prevailing view, even under common law, seems to be that a municipal corporation which constructs, operates, and maintains its own street-lighting system is not thereby exercising a governmental function and is, therefore, liable for injuries sustained by the negligent operation of the system."

An argument that the lighting of streets is a governmental function is that such lighting serves to check crime·and immorality and aids in law enforcement and maintenance of order and is, therefore, for the benefit of

the public generally. Cases holding to the contrary use the argument that street lighting is not a governmental function but is an exercise of the corporate and ministerial act performed for the benefit and convenience of its own people and to prevent suits for damages caused by defects in the street which at night might become dangerous to travelers because they are dark and unlighted.

It is difficult to see any worthwhile distinction between construction, repair and maintenance of streets and highways and the lighting thereof as both are primarily for the convenience and safe traveling of the residents of the community but, even assuming that street lighting is a governmental function, the City and County would still be liable under the doctrine set forth in *Matsumura v. County of Hawaii,* 19 Haw. 18, 22, as there is a direct invasion of the plaintiff's right as an adjacent landowner. In the *Matsumura* case the statement was made as follows: "We need not enter into a discussion of these authorities, however, nor even into those holding that the repair of highways is properly classed as a corporate and not a governmental function (*Coburn v. San Mateo County,* 75 Fed. 520; *Barree v. City of Cape Girardeau,* 197 Mo. 382; 95 S. W. 330), because we are of the opinion that under no proper conception of the doctrine of municipal immunity in the performance of governmental functions can it be held to include immunity for negligence resulting in the direct invasion of plaintiff's private right as an adjacent land owner."

In the *Matsumura* case because of defendant's negligence a stream of water flowed into plaintiff's land causing damage. In the present case, because of the negligence of the defendants a current of electricity flowed into and upon plaintiff's property causing damage.

The claim that the court erred in permitting the amendment of the petition by adding two new parties is without merit as section 10079 of the Revised Laws of Hawaii 1945 specifically provides for such amendment and, further, the City and County was not harmed but, on the contrary, saved $7,000 in damages.

The curtailment of cross examination of the expert witnesses, George J. Crowdes and Norwood Davis Kenney, if unreasonably restricted and erroneous was harmless error as there was ample evidence, including photographs, to show that the damage was caused by the defective condition of the City and County's insulators which were shown to be broken and had no insulation on the wire at or about the entrance to the insulators. Further, the experiments at certain poles showed that when the current was turned off the City and County lighting system the "arching" stopped and the "arching" came on again when the City and County light system switch at these poles was turned on. An inspection would have shown the dangerous condition of the insulators; and while the City and County is not an insurer in the operation of its electrical-lighting system and does not come within the doctrine of *Rylands* v. *Fletcher*, yet as electricity is doubly dangerous because it is invisible, noiseless and odorless, rendering it impossible to detect the presence of peril until damage is done, a municipality must exercise a care commensurate with the very dangerous instrumentality it employs.

Affirmed.

*V. T. Tashima*, Deputy City & County Attorney (*F. A. McKinley*, Acting City & County Attorney, with him on opening brief; *J. M. Morita*, City & County Attorney, with him on reply brief), for plaintiff in error.

*N. W. Y. Char* (*Sau Ung Loo Chan* and *D. E. Metzger* with him on the brief) for defendants in error.