90 P.3d 233

Francis KAHALE, Jr. and Rachael Kahale, Individually and as next friend of Brandzie Kahale, a Minor, Plaintiffs–Appellants,

v.

CITY AND COUNTY OF HONOLULU, Defendant–Appellee

and

Doe Defendants 1–25, Defendants

and

City and County of Honolulu, Third–Party Plaintiff–Appellee

v.

Alfred Alameda, Third–Party Defendant–Appellee.

No. 23934.

Supreme Court of Hawai'i.

May 12, 2004.

David J. Gierlach and Christopher A. Dias, Honolulu, on the briefs, for the plaintiffs-appellants Francis Kahale, Jr. and Rachael Kahale.

James C. Butt, Deputy Corporation Counsel and Paul S. Kawai, Deputy Corporation Counsel, on the briefs, for the defendant-appellee City and County of Honolulu.

MOON, C.J., LEVINSON, and NAKAYAMA, JJ., with ACOBA, J., concurring separately and dissenting, and with whom Circuit Judge CHAN, assigned by reason of vacancy, joins.

Opinion of the Court by LEVINSON, J.

The plaintiffs-appellants Francis Kahale, Jr. (Francis), individually, and Rachael Kahale (Rachael), individually and as next friend of Brandzie Kahale (Brandzie), a minor [collectively, the "Plaintiffs"], appeal from (1) the September 29, 2000 order of the first circuit court, the Honorable Sabrina S. McKenna presiding, granting the motion of the defendant-appellee City and County of Honolulu (the "City") for summary judgment, and (2) the November 9, 2000 judgment, signed by Judge McKenna, in favor of the City and against the Plaintiffs. On appeal, the Plaintiffs contend that, inasmuch as they brought suit against the City pursuant to Hawai'i Revised Statutes (HRS) § 657–7 (1993),[1] the circuit court erred in concluding that the statute of limitations governing their claims was not tolled by the provisions of HRS § 657–13(1) (1993).[2] In response, the City argues that the Plaintiffs actually brought their claim against the City pursuant to HRS § 662–4 (1993),[3] rather than HRS

1. HRS § 657–7 provides that "[a]ctions for the recovery of compensation for damage or injury to persons or property shall be instituted within two years after the cause of action accrued, and not after, except as provided in section 657–13."

2. HRS § 657–13 provides in relevant part:
   **Infancy, insanity, imprisonment.** If any person entitled to bring any action specified in ... part [I of HRS chapter 657] ... is, at the time the cause of action accrued ...:
   (1) Within the age of eighteen years;

. . . .
such person shall be at liberty to bring such actions within the respective times limited in this part, after the disability is removed or at any time while the disability exists.

3. HRS § 662–4 provides that "[a] tort claim against the State shall be forever barred unless action is begun within two years after the claim accrues, except in the case of a medical tort claim when the limitation of action provisions set forth in section 657–7.3 shall apply."

§ 657–7, and that HRS § 657–13 does not apply to actions commenced under HRS § 662–4, such that the statute of limitations was not subject to the tolling provisions of HRS § 657–13 and had run over a year prior to the date on which the Plaintiffs filed their complaint.

We hold that HRS § 46–72 (1993) [4] is the statute of limitations applicable to the present matter. We therefore overrule the holding of *Salavea v. City and County of Honolulu*, 55 Haw. 216, 221, 517 P.2d 51, 54–55 (1973), that, with respect to tort claims against the counties of this state, "HRS § 662–4 is the applicable statute of limitations, superseding HRS § 46–72[.]" We also hold, pursuant to HRS § 657–13(1), that the counties of this state are subject to the infancy tolling provision generally applied in personal injury actions and that HRS § 657–13(1) tolled the running of the statute of limitations as to Brandzie's claims. Lastly, we hold that, inasmuch as Francis and Rachael, as individuals, suffered no disability for purposes of HRS § 657–13, Francis's and Rachael's claims, in their individual capacities, were not similarly tolled. Accordingly, we (1) vacate the circuit court's (a) September 29, 2000 order granting the City's motion for summary judgment as to Rachael's claims in her capacity as Brandzie's next friend and (b) November 9, 2000 judgment in favor of

the City and against Rachael as Brandzie's next friend, (2) affirm the circuit court's (a) September 29, 2000 order granting the City's motion for summary judgment against Francis, generally, and Rachael, in her individual capacity, and (b) November 9, 2000 judgment against Francis, generally, and Rachael, in her individual capacity, and (3) remand this matter to the circuit court for further proceedings consistent with this opinion.

## I. BACKGROUND

The Plaintiffs' complaint alleges the following. On May 26, 1996, Brandzie (who apparently was two months shy of seven years of age at the time) was lawfully on the premises of Waimānalo District Park, where she was attacked by a pit bull dog owned by the third-party defendant-appellee Alfred H. Alameda. As a result of the attack, she suffered bodily injury and emotional distress.

On March 11, 1999, Brandzie's parents, Francis, in his individual capacity, and Rachael, individually and as Brandzie's next friend, filed a complaint against the City, alleging that the City's negligence legally caused injuries to Brandzie (Count I) and inflicted emotional distress and loss of consortium on Francis and Rachael (Count II).[5]

---

4. HRS § 46–72 provided as follows:
   **Liability for damages; notice of injuries.** Before the county shall be liable for damages to any person for injuries to person or property received upon any of the streets, avenues, alleys, sidewalks, or other public places of the county, or on account of any negligence of any official or employee of the county, the person so injured, or the owner or person entitled to the possession, occupation, or use of the property so injured, or someone in his behalf, shall, within six months after the injuries are received, give the chairman of the board of supervisors or the city clerk of Honolulu notice in writing of the injuries and the specific damages resulting, stating fully in the notice when, where, and how the injuries occurred, the extent thereof, and the amount claimed therefor. Effective June 22, 1998, the legislature amended HRS § 46–72 in technical respects not material to this appeal. *See* 1998 Haw. Sess. L. Act 124, § 1 at 479.

5. The Plaintiffs' complaint sets forth the following allegations relating to the Plaintiffs' causes of action:

8. On or about May 26, 1996, Plaintiff BRANDZIE KAHALE was lawfully on the premises of the Waimānalo District Park ("the Park") in Waimnalo, Hawai'i.

9. On the same date and at the same time, ALFRED H. ALAMEDA was on the premises of the Park and tied a pitbull which he owned to a pole.

10. On the date and at the place indicated above, said pit bull without provocation attacked Plaintiff BRANDZIE KAHALE, resulting in severe and permanent bodily harm, including but not limited to muscle damage, abrasions and contusions, hospitalization and surgery and severe emotional distress.

11. Although animals are not allowed at the Park, MR. ALAMEDA regularly tied this same pitbull to the same pole and others repeatedly brought animals onto the park.

12. The CITY AND COUNTY knew or in the exercise of reasonable diligence should have known of this practice by MR. ALAMEDA and others. . . .

Additionally, the Plaintiffs sought punitive damages against the City (Count III).

On April 13, 1999, the City filed a third-party complaint against Alameda, praying for contribution with respect to any judgment that the Plaintiffs might obtain against the City. On April 17, 2000, the Plaintiffs filed a cross-claim against Alameda, alleging that Alameda breached his duty to prevent his canine from causing Brandzie's injuries and further that Alameda's negligence had caused Francis and Rachael to suffer loss of consortium and the infliction of emotional distress. On April 20, 2000, the City filed a counterclaim against Francis and Rachael in their individual capacities, alleging that any injuries and/or damages to the Plaintiffs were the result of negligence or wrongful conduct on Francis's and Rachael's part.

On August 23, 2000, the City filed a motion for summary judgment against the Plaintiffs, arguing that HRS § 662–4, *see supra* note 3, a provision of HRS chapter 662, the State Tort Liability Act (STLA), barred all of the Plaintiffs' claims against the City because the Plaintiffs had not brought them within the two-year period of the applicable statute of limitations.

On December 8, 2000, the Plaintiffs filed a notice of appeal from the circuit court's September 29, 2000 order granting the City's motion for summary judgment and the November 9, 2000 final judgment in favor of the City and against the Plaintiffs.

On November 16, 2000, the Plaintiffs filed a motion to stay proceedings,[6] which the circuit court granted on December 26, 2000.

## II. STANDARD OF REVIEW

■ We review the circuit court's grant or denial of summary judgment *de novo*. *Hawai'i Community Federal Credit Union v. Keka*, 94 Hawai'i 213, 221, 11 P.3d 1, 9 (2000). The standard for granting a motion for summary judgment is settled:

> [S]ummary judgment is appropriate if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. A fact is material if proof of that fact would have the effect of establishing or refuting one of the essential elements of a cause of action or defense asserted by the parties. The evidence must be viewed in the light most favorable to the non-moving party. In other words, we must view all of the evidence and the inferences drawn therefrom in the light most favorable to the party opposing the motion.

> *Id.* (citations and internal quotation marks omitted).

*SCI Management Corp. v. Sims*, 101 Hawai'i 438, 445, 71 P.3d 389, 396 (2003) (quoting *Coon v. City and County of Honolulu*, 98 Hawai'i 233, 244–45, 47 P.3d 348, 359–60 (2002)).

## III. DISCUSSION

On appeal, the Plaintiffs argue that the circuit court erred in granting the City's motion for summary judgment, inasmuch as HRS § 657–13(1), *see supra* note 2, tolled the Plaintiffs' claims. Although the Plaintiffs acknowledge that, in *Orso v. City and County of Honolulu*, 56 Haw. 241, 534 P.2d 489 (1975), this court applied the two-year statute of limitations provided for in HRS § 662–4, *see supra* note 3, to claims against the state's counties, they contend that the circuit court erred in interpreting *Whittington v. State*, 72 Haw. 77, 806 P.2d 957 (1991), as standing for the proposition that the City is excepted from the infancy tolling provision of HRS § 657–13(1). The Plaintiffs assert that, because the *Whittington* "infancy tolling exception" applies only to tort claims against the state brought pursuant to the STLA, and inasmuch as the Plaintiffs have grounded their claims against the City in the class of actions described in HRS § 657–7, *see supra* note 1, the provisions of HRS § 657–13(1) therefore govern the present matter.

The Plaintiffs further maintain that "[this] Court in *Orso* did not extend the application of the entire [STLA] to claims against the

---

6. At the time of the Plaintiffs' motion to stay proceedings, the circuit court had not yet re-

solved the Plaintiffs' claims against Alameda.

counties, only the two[-]year statute of limitations," and that neither the jurisprudence of this court nor the legislative intent underlying HRS §§ 662–4 and 657–13 support the extension of the *Whittington* "infancy tolling exception" to the counties. Lastly, the Plaintiffs argue that "[t]he law in this State is abundantly clear that because of the vast differences between the State and the counties, the latter are not entitled to the same types of protection against claims as those enjoyed by the State." Based on the foregoing assertions, the Plaintiffs contend, pursuant to HRS § 657–13(1), that the statute of limitations does not begin to run on Rachael's claims on Brandzie's behalf until Brandzie reaches the age of majority in the year 2007 and that Francis's and Rachael's claims in their individual capacities are also tolled because they are derivative of Brandzie's claims for relief.

The City responds that, by virtue of the *Orso* decision, the Plaintiffs' "tort claim against the City ... is governed by HRS Section 662–4"; from the foregoing premise, the City suggests that because "*Whittington* holds that HRS Section 657–13 ... does not apply to actions brought under 662–4," "there is no tolling" of the two-year statute of limitations. Correlatively, the City asserts that *Orso* stands for the proposition that "[HRS] Section 657–7 is inapplicable in this action[,]" inasmuch as "[HRS] Section 662–4 is the two[-]year statute of limitations provision for a 'tort claim' against ... the counties." The City therefore contends that "the tolling statute does not apply ... [and] all claims against the City must be barred...."

For the reasons discussed *infra*, we agree with the Plaintiffs that the statute of limitations governing Rachael's claims in her capacity as Brandzie's next friend is tolled by HRS § 657–13(1). We disagree, however, that Francis's and Rachael's claims in their individual capacities are tolled by HRS § 657–13.

A. *HRS § 46–72 Is The Statute Of Limitations Applicable To The City Inasmuch As The STLA Does Not Impact The Tort Liability Of The State's Political Subdivisions.*

Our analysis begins with *Salavea*, in which this court held that, with respect to tort claims against the counties of this state, including the City and County of Honolulu, "HRS § 662–4 is the applicable statute of limitations, superseding HRS § 46–72." 55 Haw. at 221, 517 P.2d at 54–55; *see supra* note 4. This court based the foregoing holding on the following statutory construction of the STLA:

> ... [A] statute providing for tort liability of the State *and its political subdivisions* is a law of general application throughout the State of Hawaii on a matter of statewide interest and concern. Thus, we hold that HRS § 662–4 is the applicable statute....

> We also hold that provisions of [HRS] § 46–72 are inconsistent with [HRS] § 662–4 and invalid. HRS § 46–72 was first enacted by Act 181, SLH 1943, while HRS § 662–4 is part of the [STLA] of 1957. Because of their respective dates of enactment, it is clear that provisions of the former cannot control over contrary provisions of the latter.... *[A]lthough repeals by implication are not favored, implications of repeal is appropriate in some instances. Here, an intention of implied repeal may be logically inferred ....*

> First, ... a conflict in statutes such as that presented in the instant case should be resolved in favor of the statute regulating state matters, rather than that controlling county affairs only.

> ....

> Finally, ... [t]he basic theory of governmental tort liability in Hawaii is that the State *and its political subdivisions* shall be held accountable for the torts of governmental employees "... in the same manner and to the same extent as a private individual under like circumstances ..." HRS § 662–2. Thus, it would be unreasonable to hold that a party's right to recover damages in tort from the City and County of Honolulu, *a subdivision of the state,* created by the legislature, is more restrictive than his right to recover from the State itself.

> We therefore hold that HRS § 662–4 is the applicable statute of limitations, superseding HRS § 46–72....

*Id.* at 219–21, 517 P.2d at 54–55 (emphases added) (citations omitted) (some ellipsis points added and some in original).

It is like shooting fish in a barrel to note that if the statute of limitations contained in the STLA, *i.e.,* HRS § 662–4, governed tort claims against the City, then the entirety of the STLA would govern such claims as well, there being no logical basis for slicing and dicing the STLA into applicable and inapplicable pieces. And yet, in *Orso,* this court perceived "no valid reason to extend the applicability of any other provisions of HRS Chapter 662 to the City and County of Honolulu, and ... specifically limit[ed] the holding of *Salavea* to the applicability of only HRS § 662–4 to the City and County of Honolulu." 56 Haw. at 247, 534 P.2d at 493. As it happens, there was method behind the *Orso* court's parsimonious view.

Obviously, HRS § 662–4 could have repealed HRS § 46–72 by implication only if the two statutes were truly "in conflict," by virtue of the STLA being, as the *Salavea* majority claimed, "a statute providing for tort liability of the State *and its political subdivisions* [.]" 55 Haw. at 219, 517 P.2d at 54 (emphasis added). But the STLA does *not* provide for the tort liability of the state's "political subdivisions." Pursuant to HRS § 662–2 (1993), "[t]he State ... waive[ed] its immunity for liability for the torts of *its employees* and [was rendered] liable in the same manner and to the same extent as a private individual under like circumstances," except with respect to prejudgment interest and punitive damages. (Emphasis added.) HRS § 662–1 (1993) defines "[e]mployees of the State" to include "officers and employees of any *state agency,* members of the *Hawaii national guard, Hawaii state defense force,* and persons acting in behalf of a *state agency* in an official capacity, temporarily, whether with or without compensation." (Emphases added.) The statutory definition also includes county-employed lifeguards "designated to provide lifeguard services at a designated *state beach park* under an *agreement between the State and that county.*" HRS § 662–1 (Emphases added.) And HRS § 662–1 defines "State agency" to include "the executive departments, boards, and commissions *of the State,*" excluding "any

contractor with the State." (Emphasis added.)

▮ The City and County of Honolulu, having no sovereign immunity to waive, does not fall within the shadow of the STLA. *See Kamau v. County of Hawaii,* 41 Haw. 527, 552–53 (1957); *see also infra* section III.B. We therefore subscribe to the following remarks of Justice Bernard H. Levinson, concurring and dissenting in *Salavea:*

The majority opinion is a collapsible house of cards built with a stacked deck which includes a joker in the form of equating the statutory word "State" with the opinion's "State or political subdivision." It offers no support for its conclusion that the two-year statute of limitations for tort actions against the "State," HRS § 662–4, applies to this tort claim against the City and County of Honolulu.... Indeed, the majority's *ipse dixit* correlation of counties with the State is contrary to the reasoning of *Kamau v. County of Hawaii,* 41 Haw. 527 (1957), wherein this court held that the differences between State and local governments in terms of their law-making powers justified the rejection of the common-law doctrine of sovereign immunity with respect to the latter....

... I cannot agree that HRS § 662–4 has any relevance to the timeliness of the plaintiffs' claims in this case.

*Salavea,* 55 Haw. at 221–22, 517 P.2d at 55 (Levinson, J., concurring and dissenting). We also adopt the view advocated by Justice Marumoto, dissenting in *Salavea:*

Under the State Tort Liability Act, the State has waived its immunity from liability for torts of its employees. The Act defines a State employee as including officers and employees of any State agency, and defines State agency as including the executive departments, boards, and commissions of the State.

A county, including the City and County of Honolulu, is not an executive department, board, or commission of the State.

*Id.* at 225, 517 P.2d at 57 (Marumoto, J., dissenting).

■ On the foregoing bases, we overrule *Salavea* and all other decisions of the appellate courts of this state that rely on *Salavea* for the proposition that HRS § 662–4 supersedes HRS § 46–72. We hold that counties do not fall within the ambit of the STLA and that HRS § 46–72, which the legislature is free to amend, is the statute of limitations applicable to actions against the counties.[7]

7. Assuming *arguendo* that "an intention of implied repeal [of HRS § 46–72 could have been] logically inferred" from the legislature's enactment of HRS § 662–4 in 1957, *Salavea* 55 Haw. at 219, 517 P.2d at 54, the legislature's amendment of HRS § 46–72 in 1998 would have acted as an "implied reenactment" of the statute. *See* 1998 Haw. Sess. L. Act 124, § 1 at 479. Act 124, "[t]he purpose of [which was] to amend the Hawai[[']i Revised Statutes to replace references to county boards of supervisors with references to the council of each county," *see* Hse. Conf. Comm. Rep. No. 86, in 1998 House Journal, at 985; Sen. Conf. Comm. Rep. No. 86, in 1998 Senate Journal, at 779, belies Justice Acoba's assertion, at 350, 90 P.3d at 242 of his concurring and dissenting opinion, that "the majority's holding ignores … the great weight to be accorded the legislature's acquiescence in the *Salavea* rule," as well as his claim that, for the last thirty years, "the legislature has implicitly acquiesced to this court's application of [HRS § ] 662–4 to the counties." Concurring and dissenting opinion at 352, 90 P.3d at 244. If HRS § 46–72 were the statutory nullity—long since abandoned out of legislative deference to this court's pronouncement in *Salavea* that "HRS § 662–4 is the … statute of limitations [applicable to the counties], superseding HRS 46–72," 55 Haw. at 221, 517 P.2d at 55—that Justice Acoba believes it to be, then the legislature would not have gone to the trouble of modernizing HRS § 46–72 in 1998, while at the same time expressly retaining the six-month statute of limitations prescribed in the statute. Ergo, the legislature has manifestly *not* "acquiesc[ed] in the *Salavea* rule," nor has it yet abandoned its six-month statute of limitations applicable to tort claims against the counties of this state, although it certainly could by further amending HRS § 46–72 or repealing it altogether.

Justice Acoba decries the majority's abrogation of the thirty-plus-year-old *Salavea* rule "without a showing of compelling justification." Concurring and dissenting opinion at 350, 351, 90 P.3d at 242, 243. We respectfully disagree with his assessment. The "compelling justification" for our abrogation of the *Salavea* rule is that its reasoning is analytically bankrupt. Indeed, we would be failing in our appellate responsibility if we were to turn a blind eye to that analytical bankruptcy. Unlike fine wine, analytically bankrupt appellate decisions do not improve with age. Justice Acoba makes no attempt to defend *Salavea*'s central premise, namely, that the STLA provides "for tort liability of the State *and its political subdivisions*." 55 Haw. at 219, 517 P.2d at 54 (emphasis added). This is not surprising. Given the plain language of HRS §§ 662–1 and 662–2, *Salavea*'s central premise is indefensible. *See supra* at 353, 90 P.3d at 245.

> With regards to overruling a previous decision of this court,
> we do not lightly disregard precedent; we subscribe to the view that great consideration should always be accorded precedent, especially one of long standing and general acceptance. Yet, it does not necessarily follow that a rule established by precedent is infallible. If unintended injury would result by following the previous decision, corrective action is in order; for we cannot be unmindful of the lessons furnished by our own consciousness, as well as by judicial history, or the liability to error and the advantages of review. As this court has long recognized, we not only have the right but are entrusted with a duty to examine the former decisions of this court and, when reconciliation is impossible, to discard our former errors.

*Francis v. Lee Enters., Inc.*, 89 Hawai'i 234, 236, 971 P.2d 707, 709 (1999) (internal citations, quotations, and bracket omitted); *see also State v. Jenkins*, 93 Hawai'i 87, 111–12, 997 P.2d 13, 37–38 (2000) (citing *Francis, supra*); *Parke v. Parke*, 25 Haw. 397, 401 (1920) ("It is generally better to establish a new rule than to follow a bad precedent.").

*State v. Brantley*, 99 Hawai'i 463, 465, 56 P.3d 1252, 1254 (2002), *overruling State v. Jumila*, 87 Hawai'i 1, 950 P.2d 1201 (1998); *see also Jenkins*, 93 Hawai'i at 111–12, 997 P.2d at 37–38, *overruling State v. Auwae*, 89 Hawai'i 59, 968 P.2d 1070 (App.1998), and *State v. Mundell*, 8 Haw.App. 610, 822 P.2d 23 (App.1991); *Francis*, 89 Hawai'i at 236–37, 971 P.2d at 709–10, *overruling Dold v. Outrigger Hotel*, 54 Haw. 18, 501 P.2d 368 (1972); *Espaniola v. Cawdrey Mars Joint Venture*, 68 Haw. 171, 182–83, 707 P.2d 365, 373 (1985), *overruling Sugue v. F.L. Smithe Machine Co.*, 56 Haw. 598, 546 P.2d 527 (1976).

Justice Acoba's veneration of the doctrine of *stare decisis, see* concurring and dissenting opinion at 350–351, 90 P.3d at 242–243, is, at the very least, flexible. He authored the opinion of the court in *State v. Haanio*, 94 Hawai'i 405, 413–14, 16 P.3d 246, 254–55 (2001), in which this court, *sua sponte*, exploited its disagreement with the interpretation of the Intermediate Court of Appeals of the rule set out in *State v. Kupau*, 76 Hawai'i 387, 879 P.2d 492 (1994), in order to create an "opportunity to reexamine" the *Kupau* rule and to overrule it. Moreover, he has not hesitated, when he is in agreement, to join the majority in overruling previously binding appellate precedent. *See State v. Mueller*, 102 Hawai'i 391, 393, 76 P.3d 943, 945 (2003), *overruling State v. Rulona*, 71 Haw. 127, 785 P.2d 615 (1990); *State v. Sanders*, 102 Hawai'i 326, 327–28, 76 P.3d 569–570 (2003), *overruling State ex*

However, in order to avoid unfair prejudice to plaintiffs who have detrimentally relied upon *Salavea* with respect to the statute of limitations governing tort claims against the counties, we emphasize that our holding is prospective only and applies to all claims for relief accruing after the date of this opinion.[8] *See State v. Ikezawa*, 75 Haw. 210, 220–21, 857 P.2d 593, 598 (1993); *State v. Garcia*, 96 Hawai'i 200, 211, 29 P.3d 919, 930 (2001); *Lindinha v. Hilo Coast Processing Co.*, 104 Hawai'i 164, 169–170, 86 P.3d 973, 978–79 (2004).

B. *Because Kamau Correctly Held That Municipalities Are Not Entitled To Sovereign Immunity, The City Is Subject To The Infancy Tolling Provisions, Set Forth In HRS § 657–13(1), Generally Applicable In Personal Injury Actions.*

As discussed *supra* in section III.A, this court established in *Kamau* that, although the state is the beneficiary of common law sovereign immunity, the counties are not. 41 Haw. at 552–53. Prior to this court's ruling in *Kamau*, municipalities were immune from tort liability arising out of actions involving the exercise of "governmental functions" but were liable for claims alleging the exercise of "private or corporate functions," a distinction that confounded municipal tort litigation in Hawai'i. *Id.* at 528; *see also Mark v. City and County*, 40 Haw. 338, 340 ("As to what is a governmental function and what is a corporate or ministerial act of a municipality is a

question upon which there is a wide divergence of opinion. The cases are in hopeless confusion and even in the same jurisdiction often impossible to reconcile."). *Kamau* overruled six previous decisions that had endorsed the foregoing distinction between governmental and private functions, holding that "where [a municipality's] agents are negligent in the performance of their duties so that damage results to an individual, it is immaterial that the duty being performed is a public one from which the municipality derives no profit or that it is a duty imposed upon it by the legislature." 41 Haw. at 552.

■ *Kamau*, furthermore, incorporated into its analysis the principle set forth by Justice Holmes in *Kawananakoa v. Polyblank*, 205 U.S. 349, 353, 27 S.Ct. 526, 51 L.Ed. 834 (1907), that "[a] sovereign is exempt from suit, not because of any formal conception or obsolete theory, but on the logical and practical ground that there can be no legal right as against the authority that makes the law on which the right depends." *Kamau*, 41 Haw. at 538 (internal quotation signals omitted). Nevertheless, the *Kamau* court observed that "the immunity of the sovereign State rests on the doctrine that the State which makes the laws is immune to suit, but no such reasoning can be indulged in on behalf of a municipal corporation." *Id.* at 542. Thus, because the City is neither the sovereign nor the surrogate or alter ego of the sovereign,[9] it is not entitled to sovereign immunity.

rel. *Marsland v. Town*, 66 Haw. 516, 668 P.2d 25 (1983), and *In re Dinson* 58 Haw. 522, 574 P.2d 119 (1978); *Bauernfiend v. AOAO Kihei Beach Condominiums*, 99 Hawai'i 281, 284, 54 P.3d 452, 455 (2002), *overruling Hoke v. Paul*, 65 Haw. 478, 653 P.2d 1155 (1982); *State v. Ah Loo*, 94 Hawai'i 207, 211, 10 P.3d 728, 732 (2000), *overruling State v. Blackshire*, 10 Haw.App. 123, 861 P.2d 736, *cert. denied*, 75 Haw. 581, 863 P.2d 989 (1993).

8. The prospectivity of our holding renders inexplicable Justice Acoba's assertions that "[t]he consequence of overruling *Salavea* is to raise questions with respect to the status of existing and pending claims and to wreck havoc with future claims which would have been governed by the two-year limitations period until the case at hand." Concurring and dissenting opinion at 349–50, 90 P.3d at 241–42. Justice Acoba's la-

ment that "[r]eviving the counties' six-month notice requirement will bar potentially meritorious claims in the future, for persons who fail to bring their claims within six months will be deprived of their day in court," concurring and dissenting opinion at 352, 90 P.3d at 244, should be directed to the legislature. If the legislature perceives "havoc" (or bad policy, for that matter) in the current manifestation of HRS § 46–72, the legislature is perfectly free to amend the statute to provide, say, for a two-year limitations period or to repeal it altogether, in which case tort claims against the counties would be governed by HRS § 657–7.

9. According to the Revised Charter of Honolulu § 1–101 (2000), "[t]he people of the City and County of Honolulu shall be and continue as a body politic and corporate by the name of 'City and County of Honolulu.' "

As such, the City is subject to the state's tort laws in the same manner as any other private tortfeasor. *See Kaczmarczyk v. City and County of Honolulu,* 65 Haw. 612, 614–17, 656 P.2d 89, 91–94 (1982) (*per curiam*) (determining that the plaintiff could bring a wrongful death action against the City, notwithstanding the circuit court's dismissal of the same claim against the state); *see also Wong v. Hawaiian Scenic Tours, Ltd.,* 64 Haw. 401, 403–06, 642 P.2d 930, 931–33 (1982) (*per curiam*) (permitting recovery in a tort action against the City); *Littleton v. State,* 66 Haw. 55, 67–68, 656 P.2d 1336, 1344–46 (1982) (applying traditional tort analysis to a claim against the City). Inasmuch as HRS § 657–13 governs classes of "personal" tort actions, such as "[d]amage to persons or property," *see* HRS § 657–7, the infancy tolling provision of HRS § 657–13(1) applies directly to personal injury actions against the City.

As discussed *supra* in section III.A, the Plaintiffs' claims against the City are subject to the statute of limitations set forth in HRS § 46–72. The Plaintiffs' claims for relief are among those described by HRS § 657–7 ("[d]amage to persons or property"), which are therefore "specified" in part I of chapter 657. Inasmuch as Brandzie was "[w]ithin the age of eighteen years" at the time that the present matter arose, the infancy tolling provision of HRS § 657–13(1) allowed her the "liberty to bring such actions . . . at any time while the disability exists." Rachael, as Brandzie's next friend, having filed claims for relief on Brandzie's behalf while she was still a minor, ensured that HRS § 46–72 would not act as a bar to those claims against the City.

However, in their individual capacities, Francis and Rachael suffered no disability with regard to their claims, and, by its plain language, HRS § 657–13(1) nowhere provides for the tolling of derivative actions. In this connection, we note that other jurisdictions have refused to extend the scope of infancy tolling provisions to derivative claims. *See Emerson v. Southern Ry. Co.,* 404 So.2d

576, 580 (Ala.1981) (noting that "the derivative claim for loss of consortium of a spouse or parent is not subject to the tolling statute of the infant"); *Smith v. Long Beach City Sch. Dist.,* 276 A.D.2d 785, 715 N.Y.S.2d 707, 708 (2000) (observing that "the infancy toll is personal to the infant and does not extend to the parents' derivative claims"). Thus, because Francis and Rachael did not timely comply with HRS § 46–72 with respect to their individual claims, those claims against the City are time-barred.

### IV.  CONCLUSION

Based on the foregoing analysis, we (1) vacate the circuit court's (a) September 29, 2000 order granting the City's motion for summary judgment as to Rachael's claims in her capacity as Brandzie's next friend and (b) November 9, 2000 judgment in favor of the City and against Rachael as Brandzie's next friend, (2) affirm the circuit court's (a) September 29, 2000 order granting the City's motion for summary judgment against Francis, generally, and Rachael, in her individual capacity, and (b) November 9, 2000 judgment against Francis, generally, and Rachael, in her individual capacity, and (3) remand this matter to the circuit court for further proceedings consistent with this opinion.

Concurring and Dissenting Opinion by ACOBA, J., with whom Circuit Judge CHAN joins.

I respectfully dissent to the majority's decision to "overrule the holding of *Salavea v. City & County of Honolulu,* 55 Haw. 216, 221, 517 P.2d 51, 54–55 (1973)[.]"[1] Majority opinion at 343, 90 P.3d at 235. The effect of the decision is to abrogate, without a showing of compelling justification, a thirty-year rule of law establishing that tort claims against a county are subject to the two-year statute of limitations set forth in Hawai'i Revised Statutes (HRS) § 662–4 of the State Tort Liability Act (STLA). The decision reinstates HRS § 46–72, which, under *Salavea,* was superceded by HRS § 662–4. 55 Haw. at 220, 517 P.2d at 54. The consequence of overruling

1. *Salavea* involved a claim against the City and County of Honolulu. "City" and "county" are

used interchangeably as they relate to Honolulu.

*Salavea* is to raise questions with respect to the status of existing and pending claims and to wreck havoc with future claims, which would have been governed by the two-year limitations period until the case at hand.

With all due respect, the majority's holding ignores prudential and pragmatic considerations against reversing *Salavea* as well as the great weight to be accorded the legislature's acquiescence in the *Salavea* rule. While I agree that the statute of limitations on the claim of plaintiff-appellant Brandzie Kahale (Brandzie) is tolled, and that the claims of plaintiffs-appellant Francis Kahale, Jr. (Francis) and Rachel Kahale (Rachel) (collectively the Plaintiffs) are barred, I reach these conclusions on different grounds, and in consonance with long held precedents.

### I.

First, it is worth noting that both parties maintain that *Salavea* should *not* be overturned and that HRS § 46–72 should not be reinstated as the applicable statute of limitations for the counties.[2] The Plaintiffs posit that HRS § 662–4 effectively creates a six month statute of limitations on claims against Defendant–Appellee City and County of Honolulu (the City), which would "contradict the modern trend in American tort law of 'the steady eradication of sovereign immunity'." (Quoting *Salavea*, 55 Haw. at 220, 517 P.2d at 54.) The Plaintiffs further explain that "the eradication of sovereign immunity of which the Court spoke in *Salavea* was the trend in 1973 when the opinion was written, and even now 31 years later that trend has not appeared to have been reversed."

Similarly, the City urges us not to overrule *Salavea*. It notes that we have stated that this court "should not depart from the doctrine of *stare decisis* without *some compelling justification*," and that "there is no indication that circumstances warrant a reversal of *Salavea*," in the present case. The City further submits that "[i]f at all, the policy

behind the statute of limitations require [sic] adherence to *Salavea*."

The City astutely points out a literal interpretation of HRS § 662–4 as only applying to the State and not to the City (such as that adopted by the majority), "does not end the analysis." The City maintains that this court has recognized that departure from a literal construction of a statute "is justified when such construction would produce an absurd and unjust result and the literal construction in the particular action is clearly inconsistent with the purposes and policies of the act." *Franks v. City and County of Honolulu*, 74 Haw. 328, 341, 843 P.2d 668, 674 (1993). The City declares that application of a six month statute of limitations under § 46–72 would produce "absurd and unjust results." *Id.* The City asserts this is because, as the majority in *Salavea* noted, "it would be unreasonable to hold that a party's right to recover damages in tort from the City and County of Honolulu, a subdivision of the State, created by the legislature, is more restricted than [her or] his right to recover from the State itself." *Salavea*, 55 Haw. at 220, 517 P.2d at 54.

### II.

Second and importantly, "[a]s a general rule, we do not lightly disregard precedent" for "great consideration should always be accorded precedent, *especially one of long standing and general acceptance*." *State v. Jenkins*, 93 Hawai'i 87, 112, 997 P.2d 13, 38 (2000) (citation omitted and emphasis added). Precedent is an "adjudged case or decision of a court, considered as furnishing an example of authority for an identical or similar case afterwards arising of a similar case of law. The policy of courts to stand behind precedent and not disturb settled points is referred to as the doctrine of *stare decisis*." *State v. Garcia*, 96 Hawai'i 200, 205, 29 P.3d 919, 924 (2001) (citation, brackets, and internal quotation marks omitted) (emphasis added). *Stare decisis* "operates as a principle of

---

**2.** The parties did not challenge, on appeal or in the court below, that "HRS § 662–4 is the applicable statute of limitations" with respect to tort claims against the counties, as established in *Salavea*, 55 Haw. at 221, 517 P.2d at 54–55. As a general rule, legal issues not raised at trial are

waived for the purposes of appeal. *State v. Moses*, 102 Hawai'i 449, 456, 77 P.3d 940, 947 (2003). By order of this court, the parties were required to file supplemental briefs to address the question of whether the holding of *Salavea* should be overturned.

self-restraint ... with respect to the overruling of prior decisions. The benefit ... is that it furnishes a clear guide for the conduct of individuals, ... eliminates the need to relitigate every proposition in every case; and ... maintains public faith in the judiciary as a source of impersonal and reasoned judgments." *Id.* at 205–06, 29 P.3d at 924–25 (citation, brackets, and internal quotation marks omitted).

This court has warned that "we should not change a case law just for the sake of change." *McBryde Sugar Co., Ltd., v. Robinson,* 54 Haw. 174, 180, 504 P.2d 1330, 1335 (1973). Although we have acknowledged that "there is no necessity or sound legal reason to perpetuate an error under the doctrine of *stare decisis,*" we have agreed "with the proposition expressed by the United States Supreme Court that a court should not depart from the doctrine of stare decisis *without some compelling justification.*" *Garcia,* 96 Hawaii at 206, 29 P.3d at 925. (citation, brackets, and internal quotation marks omitted) (emphasis added). Hence, when "the court reexamines a prior holding, its judgment is customarily informed by a series of prudential and pragmatic considerations designed to test the consistency of overruling a prior decision with the ideal of the rule of law, and to gauge the respective costs of reaffirming and overruling a prior case." [3] *Id.* (citation, brackets, and internal quotation marks omitted).

### A.

There is no such "compelling justification" to justify overruling *Salavea* in the present case. *See* majority opinion, p. 347, note 7, 90

P.3d at p. 239, note 7 (providing examples of cases in which justification did exist for overruling precedent, based on the specific facts of each case). The majority claims the reasoning of the *Salavea* majority "is analytically bankrupt" and contends that such reasoning constitutes a "compelling justification" for overruling *Salavea.* Majority opinion at 347, 90 P.3d at p. 239.[4] But in assessing "respective costs," the symmetry obtained by overruling *Salavea* is far outweighed by the detriment that results. *Id.* The detrimental effects of reinstating HRS § 46–72 and overruling *Salavea* are great.

Nullifying *Salavea* provides little benefit inasmuch as the concerns posed by the dissents of Justices Levinson and Marumoto[5] in the *Salavea* decision were answered in the subsequent case of *Orso v. City & County of Honolulu,* 56 Haw. 241, 247, 534 P.2d 489, 493 (1975). *Orso* held that only the limitations section of HRS § 662–4 applied to the City, and that there was "no valid reason to extend the applicability of any other provisions of HRS Chapter 662 to the [City]." *Id.* As such, the fears of the dissenters that *Salavea* would result in the extensions of "numerous ... restrictions on liability" in HRS chapter 662, or in eliminating "jury trials" in tort suits against the counties never came to fruition. The perceived need, then, for revision of this court's holding in *Salavea* was eliminated, and reversing *Salavea* is a failure in the "pruden[t]" exercise of our discretion. *Garcia,* 96 Hawai'i at 206, 29 P.3d at 925.

On the other hand, pragmatic considerations counsel against overriding the case.

**3.** The majority states that this "dissent makes no attempt to defend *Salavea's* central premise." Majority opinion p. 347 note 7, 90 P.3d at p. 239 note 7. As to this point, the majority misses the mark. It is not this court's role to "defend" or retry cases that have previously been decided by this court. Rather what is at issue is the wisdom of overturning a prior judicial decision.

**4.** We note that this court has also said that precedent may be overruled "if *unintended injury* would result by following the previous decisions." *Jenkins,* 93 Hawai'i at 112, 997 P.2d at 38 (quoting *Francis v. Lee Enters., Inc.,* 89 Hawai'i 234, 236, 971 P.2d 707, 709 (1999))(emphasis added). Thus, this court must not overrule precedent unless there is a "compelling justifica-

tion," or to prevent "unintended injury." As discussed, the majority has not demonstrated the justification for overruling 30 years of established precedent.

**5.** Specifically, Justice Levinson warned in his dissent that the STLA "contains numerous procedural and substantive restrictions on liability, which, if applicable to cities and counties, severely undercut the rights of private litigants in tort suits against these governmental subdivisions" *Salavea,* 55 Haw. at 222, 517 P.2d at 55 (Levinson, J., *dissenting*). Justice Marumoto feared the "serious consequence to one who has a tort claim against a county, for under STLA there can be no jury trial. *Id.* (Marumoto, J., *dissenting*).

Over thirty years of established precedent has "furnished a clear guide" for the courts, the counties, and the public as to the applicable statute of limitations for tort suits against the counties. *Garcia,* 96 Hawai'i at 205, 29 P.3d at 924. Abrogation of a statute of limitations relied on for thirty years places into question the status of existing and potential claims. Even if applied prospectively, the resulting upheaval will raise questions about the application and impact of such a rule. Reviving the counties' six-month notice requirement will bar potentially meritorious claims in the future, for persons who fail to bring their claims against the counties within six months will be deprived of their day in court.[6]

## B.

Without doubt, the six-month limitation period of HRS § 46–72 invites untoward results. As explained in *Salavea,* "the notice requirements of the Charter of the City and County of Honolulu set forth a limitations period much shorter than that in HRS § 662–4." *Salavea,* 55 Haw. at 218, 517 P.2d at 53. Specifically, HRS § 46–72 effectively bars any claims for personal or property injuries if the claimant does not notify the City of such a claim within "six months." This court explained that HRS § 46–72 and Section 12–106 of the Charter of the City and County of Honolulu both involve notice of claim requirements which this court decided "operate[ ], in reality, as ... statute[s] of limitations." *Id.* In describing the harsh effect of a similar six-month notice requirement, the Supreme Court of Nevada observed that the notice "statutes serve no real beneficial use but they are indeed a trap for the unwary." *Turner v. Staggs,* 89 Nev. 230, 234, 510 P.2d 879, 882 (1973).

## C.

Additionally, the doctrine of *stare decisis* carries "special force" in the present case. *Garcia,* 96 Hawai'i at 206, 29 P.3d at 925. For, "unlike in the context of constitutional interpretation," when "statutory interpretation" is involved, (as in this case, the interpretation of HRS § 662–4 and HRS § 46–72,) the "legislature remains free to alter" what this court has done. *Id.* The legislature was free to amend the statutes and, thus, to effectively overrule *Salavea,* but has never done so in the thirty years since *Salavea* was decided.

Instead, the legislature has left the two-year statute of limitations rule from HRS § 662–4 intact. In doing so, the legislature has implicitly acquiesced to this court's application of 662–4 to the counties. As this court has said, " 'where the legislature fails to act in response to our statutory interpretation, the consequence is that the statutory interpretation of the court must be considered to have the tacit approval of the legislature and the effect of legislation.' " *Ross v. Stouffer Hotel Co.,* 76 Hawai'i 454, 458, 879 P.2d 1037, 1041 (1994) (quoting *State v. Dannenberg,* 74 Haw. 75, 83, 837 P.2d 776, 780 (1992)).

Against this background, the majority claims that "the legislature's amendment of HRS § 46–72 in 1998 would have acted as an 'implied reenactment' of [HRS § 46–72]." Majority opinion at 347–48, 90 P.3d at p. 239–40. However, Act 124 did not make any significant substantive changes to HRS § 46–72. Instead its purpose was to amend *several* of the "Hawai'i Revised Statutes,"[7] for the purpose of "replac[ing] references to county boards of supervisors with references to the council of each county" and other minor stylistic changes, such as changing the term "chairman" to "chairperson". *See* Hse. Conf. Comm. Rep. No. 86, in 1998 House Journal, at 985; 1998 Haw. Sess. L. Act. 124, § 1 at

---

6. The majority questions why overruling *Salavea* will wreck havoc. Majority opinion at 348, 90 P.3d at 240. However, the various detrimental effects of reviving HRS § 46–72 are evident, as discussed herein. (i.e. noting that those who fail to bring their claims against the counties within six months will be deprived their day in court; the six month notice serves no real beneficial use, but acts as a trap for the unwary; the revival

of HRS § 46–72 may violate the equal protection clause).

7. In addition to making the aforementioned stylistic changes to HRS § 46–72, Act 124 also included similar changes to the following statutes: HRS § 54–52, HRS § 54–54, HRS § 54–59, HRS § 54–61, HRS § 54–64, HRS § 88–185, and HRS § 105–7.

479. Thus to claim that Act 124 had impliedly addressed the substantive content of HRS § 46–72 is inaccurate.

On the other hand, the legislature has never disturbed the rule established by *Salavea* "that HRS § 662–4 is the applicable statute of limitations, superseding HRS § 46–72" 55 Haw. at 221, 517 P.2d at 54–55. Since this rule's inception in 1973, there is nothing in legislative history to support the view that the legislature has diverged from the holding in *Salavea* that "the provisions of HRS § 46–72 are inconsistent with [HRS] § 662–4 and invalid." 55 Haw. at 219, 517 P.2d at 54.[8]

### D.

Furthermore, such a reversal, unsupported by substantial justification, has a deleterious effect on the "public faith in the judiciary as a source of impersonal and reasoned judgements." *Garcia*, 96 Hawai'i at 205, 29 P.3d at 924. The subsequent case law that evolved from *Salavea* evidences that this court and the public " 'have acted in reliance on [this] previous decision[.]' " [9] *Id.*, at 206, 29 P.3d at 925 (quoting *Hilton v. South Carolina Pub. Ry. Comm'n*, 502 U.S. 197, 202, 112 S.Ct. 560, 116 L.Ed.2d 560 (1991)). Thus, " 'overruling the decision [will] dislodge settled rights and expectations.' " *Id.* (quoting *Hilton*, 502 U.S. at 202, 112 S.Ct. 560, 116 L.Ed.2d 560) (positing that adherence to stare decisis has added force when the legislature and the citizens have acted in reliance on prior decisions). "In light of this history" that spans the last thirty years, I believe the majority has failed to "muster[ ] a

'compelling justification' for departing from the doctrine of stare decisis." *Id.* at 207, 29 P.3d at 926 (quoting *Hilton*, 502 U.S. at 202, 112 S.Ct. 560).

### III.

Inasmuch as the majority revives HRS § 46–72 by overruling *Salavea*, I believe it raises the potential question of whether HRS § 46–72 violates the equal protection clause of our constitution.[10] Under the equal protection doctrine, HRS § 46–72 "must satisfy either strict scrutiny or rational basis review. . . . Strict scrutiny is ordinarily applied where laws involve suspect classifications of fundamental rights, and rational basis review is traditionally applied in all other classifications." *SCI Mgmt. Corp. v. Sims*, 101 Hawai'i 438, 458, 71 P.3d 389, 409 (2003) (Acoba, J., dissenting). In cases similar to the present one, "where suspect classifications or fundamental rights are not at issue, this court has traditionally employed the rational basis test." *Id.* " 'Under the rational basis test, we inquire as to whether a statute rationally furthers a legitimate state interest. Our inquiry seeks only to determine whether any reasonable justification can be found for the legislative enactment." *Id.* (quoting *Baehr v. Lewin*, 74 Haw. 530, 571, 852 P.2d 44, 63 (1993)). HRS § 46–72 establishes a class of tort claimants and does not involve any of the "suspect classifications" protected by the Hawai'i Constitution. *Id.*

HRS § 46–72 creates a separate class of persons damaged by a *tort committed by a municipal entity* and who must give six months notice of their claim or else be barred from further action. HRS § 662–4 creates a separate class of persons damaged

8. In this light, the present case is not resolved by reference to the legislature, as suggested by the majority. *See* majority opinion p. 348 note 8, 90 P.3d at p. 240 note 8. The legislature is free to amend any statute. The issue at hand is whether compelling justification exists for overruling *Salavea*.

9. Several cases have relied upon and cited to *Salavea*. *See Ruf v. Honolulu Police Dept.*, 89 Hawai'i 315, 326, 972 P.2d 1081, 1092 (1999); *Hays v. City and County of Honolulu*, 81 Hawai'i 391, 392, 917 P.2d 718, 719 (1996); *Whittington v. State*, 72 Haw. 77, 78, 806 P.2d 957, 958 (1991); *Cootey v. Sun Inv. Inc.*, 68 Haw. 480, 483, 718 P.2d 1086, 1089 (1986); *First Ins. Co. of Hawaii, Ltd. v. Int'l Harvester Co.*, 66 Haw.

185, 189, 659 P.2d 64, 67 (1983); *Orso v. City and County of Honolulu*, 56 Haw. 241, 247, 534 P.2d 489, 493 (1975); *Kelley v. Kokua Sales and Supply Ltd.*, 56 Haw. 204, 209, 532 P.2d 673, 677 (1975); *Sherry v. Asing*, 56 Haw. 135, 142, 531 P.2d 648, 654 (1975).

10. *Article I, section 5* of the Hawai'i Constitution provides that:

No person shall be deprived of life, liberty or property without due process of law, nor be denied the equal protection of the laws, nor be denied the enjoyment of the person's civil rights or be discriminated against in the exercise thereof because of race, religion, sex or ancestry.

by a *tort committed by a state entity* and who must institute proceedings against the state within two years.[11] Application of HRS § 46–72 and HRS § 662–4, then, results in two separate classes of aggrieved parties. But those persons injured by torts committed by the county are far more limited in their ability to seek redress under HRS § 46–72, for they are faced with a six-month statute of limitations as opposed to a two-year statute.

Under HRS § 46–72, then, persons are subject to the shorter and, accordingly, harsher limitation period on the mere fact that it was the county, and not a state entity that committed the tort against them. It is not rational that the legislature would, on the one hand, place the State on equal footing with private tortfeasors who are subject to a two-year statute of limitations, *see supra* note 11, but on the other hand, extend to municipalities a much shorter statute of limitations. The justifications for notice of claim provisions, which operate as "'statutes of limitations is to encourage promptness in the prosecution of actions and thus avoid the injustice which may result from the prosecution of stale claims. Statutes of limitations attempt to protect against the difficulties caused by lost evidence, faded memories and disappearing witnesses.'" *Eto v. Muranaka*, 99 Hawai'i 488, 499, 57 P.3d 413, 424 (2002) (quoting *Shin v. McLaughlin*, 89 Hawai'i 1, 6, 967 P.2d 1059, 1064 (1998)).

In light of such purpose, no rational basis exists for subjecting claimants to two unequal, separate classifications on the basis of whether the tort was committed by a municipality as opposed to the State. As such, HRS § 46–72 arbitrarily subjects claimants of municipal torts to a six-month limitations period, while the claimants of state torts do not suffer from the same bar. Whereas no "'reasonable justification'" can explain why

the county notice claim provision should not, at a minimum, equal that of the State, it cannot pass the "'rational basis'" test as required under the equal protection clause of our constitution. *SCI*, 101 Hawai'i at 458, 71 P.3d at 409 (quoting *Baehr*, 74 Haw. at 571, 852 P.2d at 63).

## IV.

It was not necessary for the majority to reverse *Salavea* to reach the same result in the present case. This case should be decided on the following established case law.

On appeal, Plaintiffs emphasize that this action is brought against the City pursuant to HRS § 657–7 (1993). HRS § 657–7 states in its entirety that "[a]ctions for the recovery of compensation for damage or injury to persons or property shall be instituted within two years after the cause of action accrued, and not after, *except as provided in section 657–13*." (Emphasis added.) HRS § 657–13 states, in pertinent part, as follows:

If any person entitled to bring any action specified in this part [12] ... is, at the time the cause of action accrued, ...:

(1) *Within the age of eighteen years;*

. . . .

*such person shall be at liberty to bring such actions* within the respective times limited in this part, *after the disability is removed, or at any time while the disability exists.*

(Emphases added.) Plaintiffs claim that the court erred in ruling that the statute of limitations on Plaintiffs' claims was not tolled by HRS § 657–13(1).

The two-year limitation period in the STLA, HRS § 662–4, was held applicable to the City in *Salavea*. In *Salavea*, a minor

11. In addition, a third class exists, namely victims of torts caused by private tort-feasors, as included under HRS § 657–7. The two-year statute of limitations under HRS § 657–7 applies to all "[a]ctions for the recovery of compensation for damage or injury to persons or property[.]" Thus, claimants of torts caused by private entities must institute proceedings within two years. Although not relevant under the equal protection

analysis, this third class further illustrates the arbitrary nature of HRS § 46–72.

12. This refers to Part I, entitled "Personal Actions," of Chapter 657, entitled "Limitations of Actions," under Title 36 of the Hawai'i Revised Statutes, entitled "Civil Remedies and Defenses and Special Proceedings."

and his parents sued the City for injuries sustained by the minor. 55 Haw. at 216, 517 P.2d at 52. The City moved for summary judgment pursuant to Section 12–106 of the Charter of the City and County of Honolulu and HRS § 46–72,[13] claiming that the plaintiffs had failed to comply with the six-month notice requirement, barring the suit. *Id.* at 216–17, 517 P.2d at 52–53. This court disagreed, deciding that HRS § 662–4 superceded HRS § 46–72 and Section 12–106 of the Honolulu Charter. *Id.* at 219–21, 517 P.2d at 54–55. It was reasoned that the STLA was "a law of general application throughout the State of Hawaii on a matter of state-wide interest and concern," while Section 12–206 of the Honolulu Charter was "not a provision affecting the organization or governmental structure of the City and County," and, therefore, HRS § 662–4 was the applicable statute. *Id.* at 219, 517 P.2d at 53–54. This court also held that because HRS § 662–4 was enacted after HRS § 46–72, it impliedly repealed § 46–72 and was the controlling statute. *Id.* at 219, 517 P.2d at 54.

Applying the precepts of *Salavea,* two years expired before Francis and Rachael filed claims on their own behalf for loss of consortium and infliction of emotional distress; thus those claims are barred by the two-year statute of limitations. The derivative claims filed by Francis and Rachael are considered separate, procedurally, from the underlying claim. *See Yamamoto v. Premier Ins. Co.,* 4 Haw.App. 429, 435, 668 P.2d 42, 48 (1983) (indicating that wife's derivative claim for damages is separate from her spouse's tort claim); *see also Terry v. Sullivan,* 58 P.3d 1098, 1102 (Colo.Ct.App.2002) (permitting tolling for an inmate's claim while incarcerated, but disallowing tolling for the loss of consortium claim of the inmate's wife, who was free to file suit within the limitations period); *Elgin v. Bartlett,* 994 P.2d 411, 416 (Colo.1999) (recognizing tolling provisions for a child in a medical malpractice suit, but barring the loss of consortium action of the child's parents due to the running of the statute of limitations).

Since Francis and Rachael suffered no disability with regard to their claims, their action is not tolled. *See Emerson v. Southern Ry. Co.,* 404 So.2d 576, 580 (Ala.1981) (setting forth that a parent's or spouse's loss of consortium action will not enjoy tolling applicable to the originating action); *see also Smith v. Long Beach City Sch. Dist.,* 276 A.D.2d 785, 785, 715 N.Y.S.2d 707, (N.Y.App. Div.2000) (dismissing parents' negligent infliction of emotional distress claims as time barred and indicating that "the infancy toll is personal to the infant and does not extend to the parents' derivative claims"). Accordingly Francis' and Rachael's claims are barred by the statute of limitations.

The only issue remaining, then, is whether the limitations statute is tolled with respect to the claim brought on behalf of Brandzie.

## V.

Subsequent to the *Salavea* decision, in *Orso,* this court decided it was pertinent to determine, in light of *Salavea,* whether an action brought against the City would be subject to other provisions of the STLA. 56 Haw. at 247, 534 P.2d at 493. In *Orso,* an action was brought against the City for defamation of character, false arrest, false imprisonment and malicious prosecution. *Id.* It was held, pursuant to *Salavea,* that the limitations section in HRS § 662–4 was applicable to the City, but there was "no valid reason to extend the applicability of any other provisions of HRS Chapter 662 to the [City.]" *Id.; see also Breed v. Shaner,* 57 Haw. 656, 660, 562 P.2d 436, 439 (1977) (holding, pursuant to *Orso,* that the rule in *Salavea* is limited only to the applicability of HRS § 662–4 to the City, and is "not authority to support a total extension of the [STLA] to the County").

Later, in *Whittington,* this court ruled that "the extension for minors allowed in HRS § 657–13 is not applicable to actions against the State brought under Chapter 662." 72 Haw. at 78, 806 P.2d at 958. It was observed that the STLA was modeled on the federal act, and that "[f]ederal cases have refused to

**13.** HRS § 46–72 and Section 12–106 of the Charter of the City and County of Honolulu both involve notice of claim requirements which this

court decided "operates, in reality, as a statute of limitations." *Salavea,* 55 Haw. at 218, 517 P.2d at 53.

recognize minority tolling in federal tort actions." *Id.* at 78, 806 P.2d at 957. Federal statutes contain a six-year statute of limitations with express minority tolling for actions other than those based in tort, and there is no express minority tolling for tort claims. *Id.* Similarly, the HRS expressly allow for minority tolling for non-tort claims against the State, but the STLA does not. *Id.*

The City argues that the instant case involves a tort claim against the City, which, according to *Salavea*, is governed by the limitations section in the STLA, [(citing *Orso*, 56 Haw. at 247, 534 P.2d at 493),] and that under the reasoning in *Whittington*, HRS § 657–13 does not apply to an action against the City, [(citing *Whittington*, 72 Haw. at 78, 806 P.2d at 958.)] But in *Whittington*, it was concluded that "[a]ctions brought under HRS Chapter 662 however, are not actions specified in Part I of Chapter 657, and accordingly, the extension for minors allowed in HRS § 657–13 is not applicable to actions against the *State* brought under Chapter 662 and HRS § 662–4 bars this suit." *Id.* at 78, 806 P.2d at 958 (emphasis added).

Thus, by its terms, the holding in *Whittington* concerned a claim raised against the State and not against the City. Hence, *Whittington* is not dispositive. Rather, as Plaintiffs contend, "[a]bsent any law expressly extending not only the [STLA]'s two year statute of limitations, but *also* its [ (HRS § 662–4) ] proscription against tolling, to the counties, the [court] should not have [granted summary judgment] in this case[ ]" with respect to Brandzie's claims. [OB at 5.]

## VI.

In federal cases, it is well established that the limitations period under the Federal Tort Claims Act (FTCL) is not tolled during a claimant's minority. *See Papa v. United States*, 281 F.3d 1004, 1011 (9th Cir.2002); *MacMillan v. United States*, 46 F.3d 377, 380 (5th Cir.1995); *Zavala ex rel. Ruiz v. United States*, 876 F.2d 780, 783–84 (9th Cir.1989); *Landreth ex rel. Ore v. United States*, 850 F.2d 532, 534 (9th Cir.1988); *Robbins v. United States*, 624 F.2d 971, 972 (10th Cir. 1980); *Pittman v. United States*, 341 F.2d

739, 741 (9th Cir.1965); *Brown v. United States*, 353 F.2d 578, 579 (9th Cir.1965). In *Pittman*, a nine-year old child had been struck by a Naval motor vehicle on a Navy installation. *See Pittman*, 341 F.2d at 740. In view of the absence of a minority tolling provision in the FTCA, the plaintiff argued that "to deprive [minors] of rights (because of the possibility that no adult will initiate proceedings) violates due process and equal protection[.]" *Id.* at 741. The Ninth Circuit concluded, however, that the FTCA did not permit such dispensation.

> We think that the concept still adheres that the Federal Tort Claims Act was a waiver of government immunity. There are decisions that say that the act should be liberally construed. We think that may be true as to what injuries are within the act. But as to time, one can see that the Congress was alarmed about stale claims when it passed the Act and provided that there should be only a period of one year during which an action could be brought. (This was later changed to two years.) This is because of the big thing that government is and because of its difficulty in meeting stale claims.... We do not believe that the Congress could have intended that infants have up to 21 years for a statute of limitations.

*Id.* The Eleventh Circuit Court of Appeals explained in *Maahs v. United States*, that, under the statute of limitation of the FTCA, "the very right to sue evaporates" after the two-year limitation period. 840 F.2d 863, 866 n. 4 (11th Cir.1988). It was said that the principal distinction between the two-year limitation period in the FTCA and other limitations statutes is that the FTCA created a previously non-existent right to sue the government in tort. *Id.*

The STLA was adopted in 1957. *See* 1957 Haw. Sess. L. Act. 312, at 384. The legislative history of the Act does not offer insight as to the absence of a minority tolling provision in actions against the State. However, the STLA is modeled on the FTCA. *See Rogers v. State*, 51 Haw. 293, 296, 459 P.2d 378, 381 (1969). Therefore, the reasoning attributed to Congress for not including a minority tolling provision in the FTCA may

be imputed to the Hawai'i legislature in light of its enactment of the STLA with respect to State claims. *Cf. Helbush v. Mitchell*, 34 Haw. 639, 648 (1938) ("It is a generally accepted rule of statutory construction that where the legislative body adopts a law of another State all changes in words and phraseology will be presumed to have been made deliberately and with a purpose to limit, qualify or enlarge the adopted law to the extent that the changes in words and phrases imply.")

The lack of a minority tolling provision in the FTCA and the STLA is justified by sovereign immunity. In adopting the acts, Congress and the State legislature, respectively, waived immunity that they were not required to waive. The lack of a minority tolling provision in these acts, then, is a retention of immunity to that extent.

## VII.

As indicated, *supra*, the rationale precluding minority tolling under federal and state tort liability acts rests largely in sovereign immunity doctrine. It was established in *Kamau v. County of Hawai'i*, 41 Haw. 527, 552 (1957), that a municipality, such as the City, is not entitled to sovereign immunity.

Prior to 1957, the Supreme Court of the Territory of Hawai'i followed the general rule that a municipality was immune from tort liability for actions involving governmental functions, but not immune for those arising out of its private or corporate functions. *See id.* at 528. With no bright line method of determining which municipal functions were "governmental" and which were "private," "cases [were] in hopeless confusion and even in the same jurisdiction often impossible to reconcile." *Mark v. City and County of Honolulu*, 40 Haw. 338, 340 (1953). For example, in determining the City's liability for an accident involving a garbage truck, a distinction was made between the removal of "wet garbage" and "rubbish," the former being designated a governmental function and the latter a non-governmental one. *Maki v. City and County of Honolulu*, 33 Haw. 167, 179 (1934).

In *Kamau*, the Supreme Court of the Territory of Hawai'i overturned six previous decisions that had adhered to the dichotomy drawn between governmental and private functions. The territorial court held that "where [a municipality's] agents are negligent in the performance of their duties so that damage results to an individual, it is immaterial that the duty being performed is a public one from which the municipality derives no profit or that it is a duty imposed upon it by the legislature." 41 Haw. at 552.

Relevant to this case, the *Kamau* decision established that a municipality does not enjoy the sovereign immunity that the State does. Quoting Justice Holmes in *Kawananakoa v. Polyblank*, 205 U.S. 349, 27 S.Ct. 526, 51 L.Ed. 834 (1907), the *Kamau* court affirmed the principle that "[a] sovereign is exempt from suit, not because of any formal conception or obsolete theory, but on the logical and practical ground that there can be no legal right as against the authority that makes the law on which the right depends." *Kamau*, 41 Haw. at 538. It was pointed out that "[t]he immunity of the sovereign State rests on the doctrine that the State which makes the laws is immune to suit, but no such reasoning can be indulged in on behalf of a municipal corporation." *Id.* at 542. Consequently, because the City is a municipal corporation, *see* Revised Charter of Honolulu § 1–101 (2000) ("The people of the City and County of Honolulu shall be and continue as a body politic and corporate by the name of 'City and County of Honolulu.' "), it is not entitled to the sovereign immunity inhering in the State.

## VIII.

### A.

Whereas the City is not protected by sovereign immunity, it is subject, like any other tortfeasor, to tort laws. *See Kaczmarczyk v. City and County of Honolulu*, 65 Haw. 612, 614–17, 656 P.2d 89, 91–94 (1982) (determining that alleged tort victim was entitled to present its case against the City, even though the same claim was dismissed against the State); *see also, Wong v. Hawaiian Scenic Tours, Ltd.*, 64 Haw. 401, 403–06, 642

P.2d 930, 931–33 (1982) (per curiam) (permitting recovery from tortfeasor City and County of Honolulu); *Littleton v. State,* 66 Haw. 55, 67–68, 656 P.2d 1336, 1344–46 (1982) (applying traditional tort analysis to a claim against the City). The City, then, is subject to the provisions of HRS § 657–7, which pertain generally to actions for personal injury. Correlatively, the tolling provisions in HRS § 657–13 would apply to the City as it would in an action involving any other alleged tortfeasor for personal injury brought pursuant to HRS § 657–7.

### B.

The tolling provision for legal disability, which includes statute of limitations exceptions for infancy, insanity, and imprisonment, has been a part of Hawai'i state law since 1859.[14] HRS § 657–13 reflects public policy favoring minority tolling. In enacting this statute, the legislature adopted a policy of treating minors as a "protected class for purposes of extending the time limitation of their right to bring suit." *Gorospe v. Matsui,* 72 Haw. 377, 381, 819 P.2d 80, 82 (1991) (discussing the rationale for enacting HRS § 657–13). As noted in the legislative history of HRS § 657–7, under which this claim is brought, "the two-year statute of limitations should not properly run against an infant, an insane person or a person in prison during the period of his disability but ... the statute should toll during such disability, as in other cases." Sen. Stand. Com. Rep. No. 835, in 1957 House Journal, at 877. This court, in *Hun v. Center Props.,* examined HRS § 657–13 and affirmed that "it is the role of the courts to protect the interests of minors who become parties to litigation." 63 Haw. 273, 283, 626 P.2d 182, 189 (1981).

Therefore, the minority tolling provision of HRS § 657–13 tolled the running of the two-year statute of limitations as to Brandzie's claims and, thus, such claims could have been brought at any time during her minority, *see* HRS § 657–13, as happened here.

14. HRS § 657–13 was originally § 1039 of the

### IX.

Inasmuch as (1) the concerns expressed by the *Salavea* dissents have been eliminated by *Orso,* (2) there is no "compelling justification" for overruling thirty years of established precedent, *Garcia,* 96 Hawai'i at 205, 29 P.3d at 924, (3) the potential harm caused by overruling *Salavea* is great, (4) the revival of HRS § 46–72 raises serious questions of equal protection violation, and (5) the same result may be reached on existing precedents, I respectfully dissent with the majority's rationale and overruling of *Salavea.* On the grounds previously stated, I would (1) affirm the court's September 29, 2000 summary judgment order and its November 9, 2000 final judgment as to the claims brought by Francis and Rachael and (2) vacate the summary judgment order and judgment as to the claims brought on behalf of minor Brandzie and remand such claims for further proceedings.